# EXHIBIT B

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CRAIG PRICE, II, | § § | |
| Price, | § § | |
| V. | § § | CIVIL ACTION NO. 4:21-cv-03683 |
| VALVOLINE, LLC | § § | |
| Defendant. | § § § | |

## **DECLARATION OF FRANK HARRIS**

I, Frank Harris, do hereby swear, affirm and attest as follows:

1. I am over the age of 18 and able to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge. This declaration is given voluntarily. I have not been promised any benefit, coerced or threatened in any manner in exchange for the testimony in this declaration.

2. I am the Plant Manager of Valvoline's La Porte facility and have held that title since February 2020.

3. When Craig Price ("Price") was hired, the La Porte Plant Manager was Jerry Precise. I became the La Porte Plant Manager in February 2020. During most of the relevant time, Price reported to Jeffrey Brown (African American) or Dalan Motz (two or more races). Mr. Brown and Mr. Motz reported to me. Since February 2020, I have reported to Rob Shelton, the Plant Manager for the Deer Park facility. The La Porte plant's human resources point of contact is Kevin Meyers.

4. During Price's employment, Valvoline maintained an attendance policy. A true and correct copy of the attendance policy is attached to this declaration as Exhibit C.

1

Employees' attendance records are assessed on a rolling 12-month basis. Various attendance points were issued for attendance-related issues. For example, if the employee missed his/her shift, one (1) point would be assessed. If the employee was late or left his/her shift before completing at least half of the shift, one-half (1/2) of a point was assessed. Employees were advised that upon obtaining five instances/points within a twelve-month period, they would be issued a verbal warning. At six instances/points, they would be issued a Written Warning. At seven instances/points, they were suspended for three days and issued a Final Written Warning. And finally, at eight instances/points, they employee was advised that their employment would be terminated.

5. Immediately prior to my employment with Valvoline, I understand that the La Porte plant realized that it was not issuing discipline based on certain point thresholds. Employees had incurred numerous attendance points, but had not been advised of their status and the various steps of the progressive discipline policy had not been implemented. Accordingly, in late 2019/early 2020, there was a restart. While attendance points did not immediately go away, regardless of the number of points incurred by the employee, employees would start with a verbal warning. For each subsequent attendance point, the Company would proceed to the next level of discipline, as outlined above. In other words, while the attendance policy dictated that employees who had eight (8) attendance points were subject to termination of employment, if the various steps of the progressive discipline had not been documented, the first discipline would be a verbal warning.

6. Like many companies, after the onset of the COVID-19, Valvoline's policies evolved during much of 2020. However, the Company clearly communicated that employees who believed they were experiencing symptoms of COVID-19 should not come to work.

Employees were not issued attendance points if they reported that they were experiencing COVID-19 symptoms. However, employees that reported other sicknesses unrelated to COVID, would continue to be issued attendance points.

7. In April 2020, Price first reported that his significant other had contracted COVID, and then that he had a possible exposure to COVID. He was given paid time off while he quarantined. Price earned no attendance points for his COVID-related absences.

8. Price was disciplined numerous times for his attendance issues, and his multiple infractions of the attendance policy.

9. On December 30, 2019, Valvoline issued Price a Written Warning regarding his attendance. *See* Exhibit D. The Verbal Warning detailed several attendance points that had been issued since October 18, 2019. From October 18, 2019, to December 27, 2019, Price had incurred 10 attendance points. Under the plain terms of the attendance policy, Price's employment should have been terminated after accumulating 8 attendance points. However, because Price had not been disciplined for the attendance points before then, he was issued a Verbal Warning, the first level in the progressive discipline policy. Price signed the Verbal Warning which stated that, "I understand that failure to meet the expectations outlined above and sustain an acceptable level of performance moving forward may result in further disciplinary action, up to and including termination."

10. On February 10, 2020, Price was issued the next level of discipline – a Written Warning – for additional attendance issues. Exhibit E. Specifically on January 21 and February 4, 2020, Price incurred two additional ½ points for being late. He signed the Written Warning, which also stated, "[i]f there is an accumulation of 1 full incident the next level of escalation will be a 3-day un-paid suspension."

11. On May 4, 2020, Price was issued a Final Written Warning regarding his attendance. Exhibit F. Specifically, on April 28, 2020, Price earned another attendance point for calling in sick. As the time the Final Written Warning was issued, he had 14.5 attendance incidents. Price signed the Final Written Warning which stated, "Craig is receiving a final written warning and 3-day suspension for his continues [sic] attendance issues. Additional incidents can lead to further disciplinary action up to and including termination."

12. On May 27, 2020, Price received a Written Warning about his performance. Exhibit G. Specifically, he did not have his radio with him when he was called, and his failure to carry the radio violated prior instructions he had been given, and the Company's safety guidelines.

13. On June 2, 2020, Price was issued a Final Written Warning for additional performance issues. Exhibit H. Specifically, he was disciplined for wearing earbuds in the warehouse, which violated company policy. And he was seen violating his work restrictions after a recent workers' compensation injury. And finally, he was also disciplined for the insubordinate and disrespectful behavior he exhibited towards his supervisor, Jeffrey Brown. As part of the Final Written Warning, he received a 3-day suspension. He was told that "[a]dditional incidents can lead to further discipline action up to and including termination of your employment."

14. On October 26, 2020, Price called me and reported that he had attended a wedding over the weekend, and believed that he food poisoning. Price never indicated that he believed he was experiencing COVID-19 symptoms or that he had otherwise been exposed to COVID-19.

15. Price provided no evidence to me that he even was tested for COVID after the wedding.

16. Consistent with the Company's attendance policy, because he did not report he was experiencing anything he believed to be a COVID-related symptom, he was issued another attendance point for his reported food poisoning-related absence. He was eligible for termination of his employment, and the Company terminated his employment.

17. I recommended that Price's employment be terminated, which was supported by his supervisor (Mr. Shelton) and human resources (Kevin Meyers). None of the other managers at the La Porte facility (Mr. Brown or Mr. Motz) were consulted on the decision to terminate.

18. Attached hereto as Exhibit I, is the termination document presented to Mr. Price at the termination meeting, which was signed by me and Mr. Price.

19. Dennis Jannise, who is Caucasian, was issued a Final Written Warning in March 2020 for attendance-related issues. Mr. Jannise incurred no additional attendance points (in the rolling twelve-month window) after this issuance of the Final Written Warning, and thus was not disciplined further for attendance-related issues. Mr. Jannise's employment ended in February 2021 for non-attendance related issues.

20. Robert Larry, who is Black, was issued a verbal warning in January 2021 after incurring attendance points. He never incurred enough attendance points in a rolling twelve-month period to warrant termination of employment under the attendance policy.

21. Chadrick Chevis, who is Black, was issued a verbal warning in September 2021 after incurring attendance points. He never incurred enough attendance points in a rolling twelve-month period to warrant termination of employment under the attendance policy. Mr. Chevis is still employed by the Company.

22. By virtue of my position, I have access to certain Valvoline records, including company policies, employee disciplinary histories, and employee absences, among other documents. Exhibits C to I attached to Valvoline's Motion for Summary Judgment are true and correct copies of records kept by Valvoline in the regular course of business. It was in the regular course of business of Valvoline with knowledge of the act or event recorded to make, maintain, and/or transmit information thereof to be included in such records. The records were made at or near the time of the acts or events referenced in the documents, or reasonably soon thereafter. The records attached hereto are exact duplicates of the original.

PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on November 14, 2022.

_[signature]_

Frank Harris